**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **KATHLEEN Y. JORDAN,** ) | **CASE NO. 1:05CV1066** |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Judge John M. Manos** |
| **UNITED STATES DEPARTMENT OF** ) | |
| **EDUCATION,** ) | |
| ) | |
| **Defendant.** ) | **MEMORANDUM OF OPINION** |

On April 27, 2005, Kathleen Y. Jordan, Plaintiff, filed the above-captioned case against her employer, the United States Department of Education ("DOE"), alleging that it has engaged in discriminatory and retaliatory conduct. (Docket No. 1.)

On November 29, 2005, the DOE filed a motion for summary judgment. (Docket No. 18.) On January 25, 2006, Jordan filed a brief in opposition. (Docket No. 21.) On March 02, 2006, the DOE filed a reply. (Docket No. 25.)

All issued have been fully-briefed and are ripe for adjudication. For the following reasons, the motion for summary judgment (Docket No. 18) is **GRANTED**.

## I. FACTUAL BACKGROUND

On May 11, 1998, Kathleen Jordan began working for the DOE at the GS-7 level. (Docket No. 18-3 "Jordan Depo.," at 25.) She worked as an Equal Opportunity Specialist for the Office for Civil Rights. Id.

In June, 1999 she received her GS-9 promotion. Id. at 25-26. Approximately one year later, when she realized that she would not be receiving her GS-11 promotion, she filed a grievance alleging disability discrimination based on her medical condition, a blood disease causing low blood platelets. (Docket No. 18-4 "EEO Transcript," at 12-13; Docket No. 21, at 4.) On December 17, 2000, she received her GS-11 promotion through a mediation process. (Jordan Depo, at 26; EEO Transcript, at 14.)

In 2001, Jordan sought her GS-12 promotion. On November 7, 2001, she met with her supervisor, Rhonda Bowman, to discuss her elevation. (Docket No. 18-5 "AJ Decision," at 5.) Bowman informed Jordan that she would not recommend her for the GS-12 promotion. On November 16, 2001, Jordan filed a letter in opposition. (EEO Transcript, at 120; Docket No. 18-8 "Bowman Letter," at 2.) On December 21, 2001, Bowman filed a response. (Bowman Letter, at 1-16; AJ Decision, at 5.) In justifying her decision, Bowman stated in her affidavit:

> Ms. Jordan demonstrated difficulty in evaluating and analyzing the case information, determining the evidentiary value of the information, arriving at legally supportable conclusions, and in recommending appropriate determinations. . . . [D]ocuments were not presented in an organized manner and with the clarity expected of a GS-12 EOS. Also, Ms. Jordan's verbal communication and listening skills failed to meet those expected of a GS-12.

(Docket No 18-8 "Bowman Affidavit," at 1-2.) Jordan disagrees, maintaining that she did not receive her GS-12 promotion because of her strained relationship with Bowman and in retaliation for her prior protected EEO activity. (EEO Transcript, at 41-43.)

-2-

On April 11, 2002, Jordan filed an EEO complaint. (Docket No. 18-6 "EEO Decision," at 1.) The Administrative Judge held an evidentiary hearing to determine "[w]hether or not the Complainant was discriminated against in reprisal for EEO activity as to the terms and conditions of her employment with the agency." (AJ Decision, at 3.) On March 17, 2004, she concluded that Jordan did not establish a prima facie case for retaliation and that her employer provided legitimate, non-discriminatory reasons for denying the GS-12 promotion. Id. at 9.

On June 5, 2004, Jordan appealed to the Office of Federal Operations ("OFO"). On October 18, 2004, the OFO affirmed. (Docket No. 18-6 "OFO Decision.") Although the OFO held that Jordan established a prima facie case for retaliation, it concluded that her employer provided legitimate, non-discriminatory reasons for denying the promotion. Id. On November 22, 2004, Jordan filed a motion for reconsideration. On January 31, 2005, the decision was affirmed.

On April 27, 2005, Jordan filed this timely complaint, alleging a retaliation claim and a claim under the Americans with Disabilities Act ("ADA"). (Docket No. 1.) Meanwhile, during the rating periods for 05/01/2003 - 04/30/2004 and 05/01/2004 - 04/30/2005, Jordan received unsatisfactory job evaluations. (Jordan Depo., at 99, 102, Ex. F, G.) On November 25, 2005, her employment was terminated. (Docket No 21, at 9.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden to either (1) present affirmative evidence negating an element of the non-movant's claim or (2) demonstrate "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once that burden is met, the non-movant must set forth sufficient evidence to create a genuine issue of material fact. Klepper v. First Am. Bank, 916 F.2d 337, 342 (6th Cir. 1990). To avoid summary judgment, the non-movant must "make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

All reasonable factual inferences must be drawn in favor of the non-movant. Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, "the mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Indeed, "[a] mere scintilla of evidence is insufficient; rather there must be evidence on which the jury could reasonably find for the non-movant." Humenny, 390 F.3d at 904 (internal quotation omitted).

### III. LAW AND ANALYSIS

**A. ADA Claim**

Jordan alleges that she was discriminated against because of her low-platelet medical condition in violation of the ADA. The DOE responds that Jordan has not exhausted this claim. The Court agrees. According to the Sixth Circuit, "if a plaintiff did not first present a claim to the Equal Employment Opportunity Commission, that claim may not be brought before the federal courts on appeal." Tisdale v. Fed. Express Corp., 415 F.3d 516, 527 (6th Cir. 2005)

(quoting Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992)). Thus, in such cases, "the judicial complaint must be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." Id. (Quoting Ang v. Procter & Gamble Co., 932 F.2d 540, 545 (6th Cir. 1991)). However, "[if] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Id. (Quoting Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir. 1998)).

> Here, Jordan's EEO complaint was limited to the issue of retaliation:
>
> I firmly believe that Ms. Bowman's actions of continued harassment and the denial to promote me to the GS-12 grade level is direct retaliation against me because I previously exercised my right to seek assistance from IDR Center last year to resolve this same issue.

(Docket No. 18-3, at 43-44 (Ex. B to Jordan Depo.)) Thus, the EEOC only investigated the following issue:

> Whether the Complainant was discriminated against on December 21, 2001, based on reprisal (prior EEO activity), when she was denied a career ladder promotion to an Equal Opportunity Specialist, GS-360-12, position.

(Docket No. 18-3, at 41 (Ex. A to Jordan Depo.)) Nowhere in her EEO complaint does Jordan allege that she was denied her GS-12 promotion because of her low-platelet medical condition.[1] Thus, no facts were alleged that would have prompted the EEO to investigate a potential ADA claim. As a result, this claim is unexhausted and may not be brought in federal court. Tisdale, 415 F.3d at 527. The motion for summary judgment, with regard to the ADA claim, is granted.

---

[1] Although that was the basis for Jordan's prior discrimination claim regarding her GS-11 promotion, that issue has been resolved in her favor and is not presently before the Court.

**B.     Retaliation Claim**

Jordan also alleges that she was retaliated against because of her prior EEO activity. In order to establish a retaliation claim, a plaintiff must establish that (1) she engaged in some protected activity, (2) the exercise of the protected activity was known to the employer; (3) she suffered an adverse employment decision or was subjected to severe or pervasive retaliatory harassment by a supervisor; and (4) there is some causal link between the protected activity and the adverse employment decision or harassment. Morris v. Oldham County Fiscal Court, 201 F.3d 784, 793-94 (6th Cir. 2000). The burden of establishing a prima facie case is not onerous, but one easily met. EEOC v. Avery Dennison Corp., 104 F.3d 858, 861 (6th Cir. 1997).

Once a prima facie case is established, the burden of production shifts to the defendant to provide some legitimate, non-discriminatory reason for its conduct. See Carter v. University of Toledo, 349 F.3d 269, 274 (6th Cir. 2003).[2] The ultimate burden of persuasion rests with the plaintiff to establish pretext by showing that the legitimate, non-discriminatory reason (1) has no basis in fact; (2) did not actually motivate the challenged conduct; or (3) is insufficient to explain the challenged conduct. See id.

Here, Jordan alleges three adverse employment actions: (1) the denial of her GS-12 promotion, (2) her subsequent termination, and (3) retaliatory harassment by her supervisor.

---

[2] In a retaliatory harassment case, the employer may also prove an affirmative defense by establishing: "(a) that the employer exercised reasonable care to prevent and correct promptly any . . . harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." Morris, 201 F.3d at 794 (quoting Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998)).

-6-

**1. Denial of GS-12 Promotion**

The Court agrees with the OFO that Jordan has set forth a prima facie case for retaliation with regard to the denial of her GS-12 promotion. First, Jordan filed a grievance against her employer based on her belief that she was unlawfully discriminated against because of her medical condition. (OFO Decision, at 2-3 n1.) Second, her supervisor participated in the subsequent mediation process. Id. Third, the denial of the GS-12 promotion constitutes an adverse employment action. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Finally, given that Bowman participated in the mediation process, the ongoing friction between Bowman and Jordan, and the fact that Bowman made the decision not to recommend Jordan for the GS-12 promotion, a causal link existed between the prior protected activity and the subsequent adverse employment action. See Avery Dennison, 104 F.3d 858 at 861 (stating that to establish a causal link, a plaintiff must set forth sufficient evidence to raise the inference that her protected activity was the likely reason for the adverse action).

In short, (1) Jordan engaged in protected activity; (2) her supervisor was aware of this activity; (3) she suffered an adverse employment action; and (4) a sufficient causal link existed between her protected activity and her adverse employment action. Thus, Jordan has set forth a prima facie case for retaliation. See Morris, 201 F.3d at 793-94.

Once a prima facie case is established, the burden of production shifts to the defendant to provide some legitimate, non-discriminatory reason for its conduct. Carter, 349 F.3d at 274. Here, Bowman set forth several reasons for not recommending Jordan for the GS-12 promotion:

- "your need to enlist the assistance of the team attorney when conducting several relatively routine interviews" (Bowman Letter, at 1, 7.)

- "inability to process simple routine complaints appropriately and timely" (Bowman Letter, at 2.)

- "difficulty reviewing allegations and developing the legal theories necessary for the resolution of your complaints" (Bowman Letter, at 2.)

- "difficulty in evaluating and analyzing the information, determining the evidentiary value of the information, arriving at legally supportable conclusions and in recommending appropriate determination" (Bowman Letter, at 2.)

- "your written documents have not been presented in the organized manner and with the clarity of thought expected from a GS-12 level specialist" (Bowman Letter, at 2-3.)

- "your verbal communication skills and listening skills fail to meet those, which are expected from a GS-12 level specialist" (Bowman Letter, at 3.)

- "you have not demonstrated the type of team leadership skills commensurate of that of a GS-12 level specialist" (Bowman Letter, at 3.)

- "you have resolved at least 15 complaints . . . . Only two of the administrative closures . . . were resolved within the 30 day LOE due date" (Bowman Letter, at 3.)

- "a few team members openly expressed their frustration at your failure to get a handle on your complaints" (Bowman Letter, at 12.)

- "Because you failed to adequately lead the resolution of these complaints and activities, I subsequently assigned them to another specialist." (Bowman Letter, at 13.)[3]

The ultimate burden of persuasion rests with Jordan to establish pretext by showing that these legitimate, non-discriminatory reasons (1) have no basis in fact; (2) did not actually motivate the challenged conduct; or (3) are insufficient to explain the challenged conduct. See

---

[3] The evaluation was not entirely negative. Bowman did commend Jordan on her investigative and interviewing skills and stated that her written communication had improved greatly. She also recommended an individual development plan to help Jordan obtain the skills necessary to perform her job. See Bowman Letter.

Carter, 349 F.3d at 274. Here, Jordan makes no attempt to establish that these legitimate, non-discriminatory reasons have no basis in fact, did not actually motivate the challenged conduct, or are insufficient to explain the challenged conduct. Indeed, in her brief, Jordan only makes three arguments with regard to the Bowman Letter. First, she argues that it has a "discriminatory tone." Second, she argues that it incorrectly suggests that an individual development plan is necessary to receive a GS-12 promotion. Third, she argues that it incorrectly insinuates that volunteer work is needed in order to demonstrate leadership skills. However, at no point in her brief does she challenge any of the legitimate, non-discriminatory reasons contained therein. Thus, the Court concludes that Jordan has not established that these reasons are merely a pretext for retaliation.

**2. Termination**

On November 25, 2005, Jordan's employment with the DOE was terminated. Like her ADA claim however, Jordan never filed a formal EEO complaint with regard to her termination. Indeed, her termination occurred almost four years <u>after</u> she filed her EEO complaint. As the Supreme Court recognized, termination is a discrete act and "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 114 (2002) (internal quotation omitted). Thus, administrative remedies must be exhausted for each discrete incident of retaliation. See Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 149 (D.D.C. 2005). Here, Jordan was specifically notified of her appeal rights in her Notice of Removal. See (Docket No. 25-3 "Notice of Removal," at 21-23.) Because she never filed an EEO complaint with regard to her

termination, she has not exhausted her administrative remedies and thus, the issue of termination is not properly before the Court. See Benford v. Frank, 943 F.2d 609, 612 (6th Cir. 1991).

Even if the Court were to address the merits regarding the termination issue, it would nonetheless grant the motion for summary judgment. Here, again, Jordan has set forth a prima facie case for retaliation. First, she engaged in protected EEO activity. Second, both supervisors responsible for the termination decision were aware of her protected activity. See (Notice of Removal, at 3.) Third, the act of termination constitutes an adverse employment action. See Burlington Indus., 524 U.S. at 761. Finally, given that Bowman participated in the prior EEO activity, the ongoing friction between Jordan and Bowman, and the fact that Bowman filed the proposal for removal, a causal link existed between the prior protected activity and the subsequent adverse employment action. See Avery Dennison, 104 F.3d 858 at 861 (stating that to establish a causal link, a plaintiff must set forth sufficient evidence to raise the inference that her protected activity was the likely reason for the adverse action).

Once a prima facie case is established, the burden of production shifts to the defendant to provide some legitimate, non-discriminatory reason for its conduct. See Carter, 349 F.3d at 274. Here, Mary Pritchet, Jordan's second-level supervisor, set forth several reasons justifying Jordan's termination:

- "Work products are typically incomplete and/or frequently contain substantive errors" (Notice of Removal, at 16.)

- "Work production typically fails to meet essential, well established deadlines" (Notice of Removal, at 16.)

- "Work output is extremely low and requires continual monitoring" (Notice of Removal, at 16.)

- "Employee frequently fails to analyze basic facts and arrive at sound conclusions" (Notice of Removal, at 16.)

- "The employee's technical information and advice must be carefully reviewed to ensure that it is accurate and this frequently slows work progress" (Notice of Removal, at 16.)

- During [the relevant] period you failed to respond to many requests for case meetings and case status information from Ms. Bowman.  Your failure to respond resulted in Ms. Bowman having to send subsequent messages in order to obtain information from you regarding your cases and/or to schedule meetings.  This affected the timely completion of your cases and caused unnecessary delays.  (Notice of Removal, at 20.)

- Your failure to perform acceptably has affected this Office detrimentally.  Ms. Bowman has had to spend time providing additional assistance to you or, in many instances, reassigning your work to other staff so that your assignments could be completed accurately.  This has severely affected the Office's ability to carry out its mission and that of the Department of Education. (Notice of Removal, at 21.)

The ultimate burden of persuasion rests with Jordan to establish that these legitimate, non-discriminatory reasons are a pretext for retaliation.  See Carter, 349 F.3d at 274.  Here, Jordan again makes no attempt to establish that these legitimate, non-discriminatory reasons (1) have no basis in fact, (2) did not actually motivate the challenged conduct, or (3) are insufficient to explain the challenged conduct.  In fact, despite given two opportunities by her employer to respond, Jordan "did not discuss any of the specific cases noted in the Proposal [for Removal] or provide any evidence to show that Ms. Bowman's assessment of [her] performance is not credible, incorrect, or pretext."  (Notice of Removal, at 3-4.)  Likewise, in her brief, Jordan does not refute, let alone discuss, any of the specific reasons offered to justify her termination.  Thus, the Court concludes that she has not established that these legitimate, non-discriminatory reasons are merely a pretext for retaliation.

### 3. Retaliatory Harassment

Finally, Jordan argues that her employer engaged in retaliatory harassment. Because Jordan did raise the issue of retaliatory harassment in her EEO complaint, this issue is properly before the Court. (Docket No. 18-3, at 43-44 (Ex. B to Jordan Depo.))

The Court concludes that Jordan has not set forth a prima facie case for retaliatory harassment. Although she did engage in prior protected EEO activity and her supervisors were aware of this fact, she has not set forth sufficient evidence to establish that she was subject to severe or pervasive harassment. In the Sixth Circuit, severe or pervasive harassment is the same in the retaliation context as it is in the discrimination context. Akers v. Alvey, 338 F.3d 491, 198 (6th Cir. 2003). Thus, the harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. (Quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). This test has both a subjective and objective component: the harassment must be severe enough to create an environment that a reasonable person would find hostile or abusive; and the victim must have subjectively regarded the environment to be hostile or abusive. Id.

Here, the Court concludes that any harassment that may have occurred was not severe and pervasive enough to create an environment that a reasonable person would find hostile or abusive. Jordan lists several examples of the type of harassment she suffered:

- An email threatening disciplinary action for changing a meeting time

- Calling her at home twice to pick up work when Jordan was on sick leave

- Denial of the use of the flexiplace program on general staff meeting day, but allowing another employee to do so

- Quick to accuse her that she came into work late on one occasion

- Requesting her to account for her work, but not making similar requests to other employees

- Yelling at her for providing a harassment checklist to a district, but not yelling at other employees who used the same checklist in another case

- Yelling at her for her suggested itinerary for a particular case, but agreeing to a similar itinerary by another employee

- Restricting her to participating in only one awards programs as opposed to two programs simultaneously

- Delaying review of one of her cases for ten (10) days

- Yelling at her for not using the assigned attorney on a particular case

- Causing delays on particular cases and then blaming her for them

- Not recommending her for the GS-12 promotion

- Providing her with a quote from the Bible

- Denying her five (5) hours of unofficial leave

- Replacing her with another employee to serve on a particular committee

See (Docket No. 21, Ex. 8.) However, none of these actions, taken individually or collectively, constitute severe and pervasive harassment. Indeed, the Supreme Court has indicated that conduct must be sufficiently "extreme" to be considered severe and pervasive. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Thus, simple teasing, offhand comments, and isolated incidents (unless extremely serious) are insufficient. Id.

Two Sixth Circuit cases are instructive on this point. In Morris v. Oldham County Fiscal Court, 201 F.3d 784 (6th Cir. 2000), the court held that the plaintiff had set forth sufficient facts to establish retaliatory harassment. Specifically, the plaintiff had alleged that her supervisor (1) visited her place of employment unaccompanied fifteen times and called her thirty times solely

for the purposes of harassing her; (2) drove to her place of employment on several occasions and simply sat in his truck and made faces at her; (3) followed her home one day and gave her "the finger;" (4) destroyed the television she occasionally watched at work; and (5) threw roofing nails onto her home driveway on several occasions. Id. at 793. The court concluded that this conduct "clearly constitutes more than simple teasing, offhand comments, and isolated incidents." Id.

However, in Akers v. Alvey, 338 F.3d 491 (6th Cir. 2003), the court held that the plaintiff had not set forth sufficient facts to establish retaliatory harassment. Specifically, the plaintiff had alleged that her supervisor (1) refused to speak to her; (2) instructed other employees to ignore her; (3) withheld mail and inter-office memoranda from her; and (4) criticized the way she handled her cases. Id. at 494, 499. The court concluded that this conduct was short in duration, relatively mild, and insufficient to constitute severe and pervasive conduct. Id. at 499.

Here, the Court concludes that the alleged conduct in the instant case is more akin to Akers than Morris. In fact, the alleged harassment suffered by Jordan was relatively mild in comparison to both cases. Also, with regard to some of her other complaints, it is not surprising that Bowman scrutinized Jordan's work more carefully than other employees given her history of poor performance on several of her prior cases. Finally, none of the email communications attached to Jordan's brief indicate that Bowman ever took a hostile tone with her. See (Docket No. 21, Ex. 9.) Thus, the Court concludes that because the alleged conduct is insufficient to constitute severe and pervasive harassment, Jordan cannot set forth a prima facie case for retaliatory harassment. The motion for summary judgment, with regard to the retaliation claim, is granted.

### IV. CONCLUSION

For the foregoing reasons, the DOE's motion for summary judgment (Docket No. 18) is **GRANTED**. This case is dismissed, with prejudice. Each party to bear its own costs.

**IT IS SO ORDERED.**

**Date: May 10, 2006**             */s/ John M. Manos*
                                   **UNITED STATES DISTRICT JUDGE**